# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 91 C 4228 | **DATE** | 8/6/2002 |
| **CASE TITLE** | John Inzer vs. Ernie Frantz | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Report and Recommendation submitted to Judge Manning. It is recommended that Plaintiff's Motion to Adjudge Defendant in Contempt [#102] be denied. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | 5 number of notices | |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | AUG 0 7 2002 date docketed | 127 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 8/6/2002 date mailed notice | |
| ✓ | Copy to judge/magistrate judge. | | |
| FT/*ALcy* | courtroom deputy's initials | U.S. DISTRICT COURT 02 AUG -6 PM 3:25 Date/time received in central Clerk's Office | FT mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN W. INZER, <br>              Plaintiff, <br><br> v. <br><br> ERNIE FRANTZ, d/b/a ERNIE FRANTZ STUDIO, <br>              Defendant. | ) <br> ) <br> ) Case No. 91 C 4228 <br> ) <br> ) Judge Blanche M. Manning <br> ) <br> ) Magistrate Judge <br> )   Arlander Keys <br> ) <br> ) <br> ) <br> ) |

DOCKETED
AUG 0 7 2002

TO: THE HONORABLE Blanche M. Manning
UNITED STATES DISTRICT JUDGE

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff John W. Inzer's Motion to Adjudge Defendant Ernie Frantz in Contempt. For the reasons set forth below, the Court recommends that Plaintiff's Motion be Denied.

**BACKGROUND**

Plaintiff filed a patent infringement suit against Defendant in 1991, alleging that Defendant's sale of certain weightlifting bench shirts infringed upon U.S. Patent No. 4,473,908 (the "'908 patent")[1]. In September 1996, the court entered a consent

---

[1] Plaintiff licensed this patent, which was issued on October 2, 1984, from its owner, Gabriele Knecht.

judgment, resolving the parties' dispute. Notably, the consent judgment contained an admission of liability, but the district court was not called upon to construe the claims of the '908 patent. Under the terms of the consent judgment, Defendant was enjoined from "infringing claims 3, 4, and 5 of (the '908 patent) and specifically from manufacturing, using, selling, or inducing the manufacture, use or sale of, during the term of the patent, the Frantz bench shirt[2] . . . except under express license from plaintiff John W. Inzer." The judgment described the '908 patent as claiming a "sleeved bench lifting shirt . . . in which the natural axis of the sleeves is set at a forward angle to the axis of the shoulders of the shirt, and the low point of the armhole of each sleeve is forward of the shoulder highpoint of said armhole, so that, when worn, the shirt tends to pull the arms of the wearer forward of the body."

Prior to entry of the consent judgment, the parties executed a Licensing Agreement, under which Plaintiff provided Defendant with a license to sell the offending bench shirt for a period of six months after the entry of the consent judgment, in exchange for a royalty payment of $5.00/shirt sold. The licensing agreement expired on February 28, 1997, but Defendant continued to sell the infringing shirt. Being a good sport, Defendant also continued to

---

[2] In the consent judgment, the parties stipulated to the fact that the offending Frantz bench shirt is a tight fitting shirt with sleeves angled forward from the body.

2

make royalty payments to Plaintiff until approximately May, 1997, when Plaintiff complained that Defendant was violating the terms of the consent judgment. On July 3, 1997, Plaintiff's counsel mailed Defendant's counsel[3] a letter demanding that Defendant cease sales of the infringing shirts, and requesting an accounting of all illicit profits. Defendant largely ignored Plaintiff's complaints, and on August 19, 1997, Plaintiff sent Defendant a second letter, repeating his demands and threatening contempt proceedings.

Apparently, the threat of contempt caught Defendant's attention; Defendant retained new counsel and contacted Plaintiff shortly thereafter. Defendant informed Plaintiff that he was presently in compliance with the consent judgment, and was anxious to settle to avoid contempt. Plaintiff was skeptical that Defendant had reformed, and demanded $18,000 to settle the post-licensing agreement infringement. Defendant replied on September 24, 1997, assuring Plaintiff that he was in compliance with the terms of the consent judgment and offering to settle the matter for $2,500, inclusive of attorney's fees.

Before Plaintiff could respond to Defendant's counter-offer, Defendant threatened to ban the use of Plaintiff's weightlifting equipment from major tournaments that Defendant sponsored, unless

---

[3] At the time Mr. Frantz' attorney of record was Mr. Synek. Mr. Synek later informed Plaintiff's counsel, David Shough, that he was no longer representing Plaintiff. **Defendant is currently represented by Jason Young.**

3

Plaintiff agreed to permit Defendant to sell the infringing shirts indefinitely, under the terms of the expired licensing agreement.[4] Apparently, Plaintiff took Defendant's threat seriously and dropped the matter. Plaintiff claims that he feared the potential reprisal of pursuing his claims, and that he was satisfied that Defendant would continue to comply with the consent judgment.

Nevertheless, Plaintiff decided to monitor the market to ensure Defendant's continued compliance. Plaintiff allegedly uncovered repeated violations of the consent judgment. In June 1998, Plaintiff was able to purchase over the Internet a Frantz bench shirt, which at least resembled the shirt subject to the consent judgment. Plaintiff has presented no evidence that he contacted Defendant about this sale or demanded that Defendant cease selling the shirt. Plaintiff spotted a similar shirt on Frantz' web site in December, 2001. This time, Plaintiff took action; on December 27, 2001, Plaintiff filed the instant Motion to Adjudge Defendant in Contempt.

Plaintiff alleges that Defendant sold two categories[5] of

---

[4] In a letter dated October 1, 1997, Defendant not so subtly threatened to bar Plaintiff's equipment from APF and WPC events, and to discredit Plaintiff and his equipment worldwide, unless Plaintiff agreed to permit Defendant to sell the infringing bench shirt in exchange for a $5/shirt royalty payment.

[5] This dispute initially concerned three categories of shirts; Plaintiff also claimed that Defendant's sale of closed back bench shirts prior to July 1999 violated the consent judgment. Plaintiff later conceded that, based upon the available evidnece, he could not make a case of contempt with regard to this shirt.

4

shirts that violate the '908 patent and the consent judgment: 1) open back shirts; and 2) closed back shirts sold in 2001. On May 15, 2002, this Court held a hearing on Plaintiff's Motion, permitting both sides to present argument and evidence. The parties presented the Court with the shirt embodying the '908 patent and the accused shirts. Mr. Inzer was the primary witness, testifying as to his interpretation of the '908 patent, the previously adjudicated shirt, and the newly accused shirts. The Court permitted Defendant to present the testimony of Richard Zenzen, an experienced weightlifter who owns several of Defendant's shirts, about the superiority of Defendant's open back shirts. No other evidence or testimony was received at the hearing.

## DISCUSSION

Instead of filing a new lawsuit to adjudicate whether the accused shirts infringe upon the '908 patent, Plaintiff seeks to have the Court find Defendant in contempt of the consent judgment for producing and selling these shirts. Defendant insists that due process demands that this dispute be fully litigated, and that a summary contempt proceeding is not sufficient to protect his rights. Therefore, before evaluating whether Defendant's sale of the accused shirts infringed the '908 patent and placed Defendant in contempt of the consent judgment, the Court will determine whether the contempt proceeding is an appropriate vehicle for adjudicating Plaintiff's claims.

The Court's contempt powers are derived from 18 U.S.C. §401 (West 2002), which enables courts to punish by fine, imprisonment, or both those who violate court orders. A finding of contempt is appropriate when the patent owner proves, by clear and convincing evidence, that the modified device falls within the admitted or adjudicated scope of the claims. *KSM Fastening Systems, Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1530 (Fed. Cir. 1985).

Thus, contempt proceedings permit patent owners to protect what they achieved in prior litigation, without filing a new suit to adjudicate infringement. The Court's contempt powers do not, however, trump the former infringer's right to due process. The Federal Circuit has instructed that contempt should be regarded as a shield, protecting patentees against an "infringer's flagrant disregard for court orders," "not a sword for wounding a former infringer who has made a good-faith effort to modify a previously adjudged or admitted infringing device to remain in the marketplace." *Arbek Manufacturing, Inc. v. Moazzam*, 55 F.3d 1567, 1570 (Fed. Cir. 1995).

Courts have attempted to strike a balance between the rights of the patentee and the former infringer by limiting contempt proceedings to cases where there are no substantial open issues with respect to infringement to be tried; that is, where the accused device is substantially the same as the protected design. *Id.* Therefore, "[w]here the alteration in the device is merely

6

colorable and obviously was made for the purpose of evading the decree," contempt is appropriate. *American Foundry & Mfg. Co. v. Josam Mfg. Co.*, 79 F.2d 116, 118 (8th Cir. 1935) (quotations omitted.)

However, if the accused device does not clearly infringe the patentee's design and "there are substantial issues for determination of the court, the [patentee] may not have them determined in contempt proceedings, but must bring a supplemental bill for an injunction covering the new device, or institute a whole new suit for such an injunction." *Id.* Where there is a colorable difference between the accused and the adjudged devices, contempt is inappropriate and the patentee should bring a new suit to adjudicate his claims. *Mahurkar v. Arrow Int'l*, NO. 91 C 8243, 1999 WL 608707, at *3(N.D. Ill. Aug. 5, 1999) ("In such instances, the modifying party 'generally deserves the opportunity to litigate the infringement question at a new trial.'") In deciding whether the accused shirts are colorably different, the Court must determine whether 1) "substantial disputed issues must be litigated;" and 2) "whether an injunction has been violated, [which] requires, at a minimum, a finding that the accused device is an infringement." *KSM Fastening*, 776 F.2d at 1532.

The first step in the Court's inquiry is a "comparison between the original infringing product and the redesigned product." *Additive Controls & Measurements System, Inc. v. Flow Data., Inc.*,

154 F.3d 1345, 1349 (Fed. Cir. 1998). Therefore, before discussing the accused shirts, a brief description of the adjudicated Frantz bench shirt is in order. The adjudicated Frantz bench shirt is a tight fitting shirt with sleeves angled forward from the body. The parties agreed that any distinctions between the Frantz shirt and Plaintiff's shirt were not material, and that the Frantz bench shirt infringed the '908 patent. The claims of the '908 patent were not otherwise construed by the Court in entering the consent judgment.

In the instant case, the Court finds that there is more than a colorable difference between the accused shirts and the design protected by the '908 patent. For that reason, the Court recommends denying Plaintiff's Motion. The Court discusses each category of shirt at issue in turn.

### A. Open Back Shirts

Unlike the adjudicated Frantz bench shirt, the accused open-back shirt resembles a straight jacket, with three notable exceptions: 1) the sleeves of the bench shirt are shorter and are not bound, and the wearer is free to move his arms and hands; 2) the neck of the open-back bench shirt is one continuous piece of fabric, requiring the wearer to pull the shirt over his head; and 3) instead of ties, the back of the shirt is closed by securing several velcro straps sewn onto the back of the shirt. The velcro straps permit a weightlifter to adjust the bench shirt himself, to

freely pull the arms, chest, and part of the seam and back forward of the lateral plane of the body, to place more of the shirt in tension during a press. This additional tension, in turn, provides the weightlifter with the ability to increase his lifting capacity.

Defendant argues that the open back shirt is more than colorably different than the claimed device, because it effects an element of a claim. Defendant insists that, while the open back shirt has an adjustable lateral plane of the body (by means of the velcro straps), the '908 patent limits its claim to shirts with a defined, predetermined lateral plane.

Plaintiff counters that Defendant's modification is too insignificant to avoid infringement and contempt. Plaintiff insists that even an adjustable shirt has a defined lateral plane when worn; once the shirt is donned by the wearer and the back velcro straps are adjusted, Plaintiff argues, a defined lateral plane exists. Therefore, Defendant's argument that the lack of a defined lateral phase distinguishes the open back shirt must fail.

The Court disagrees that the issue is as clear cut as Plaintiff would have it. Without construing the claim itself, the Court notes that Defendant has presented evidence indicating that the open back shirt functions differently than the claimed design, to achieve arguably superior results.

At the hearing, Plaintiff conceded that weightlifter George

Halbert was able to set a new bench-pressing record because of the extra pressure afforded by the open back shirt. Plaintiff conceded that the open back shirt enabled Mr. Halbert to lift an additional 100 lbs. Similarly, Mr. Zenzen testified that the adjustable velcro straps permitted Mr. Halbert to "reload differently" and lift more weight. Mr. Zenzen explained that the open back shirt was preferable to prior art, such as the bow-tied back shirt, because this open back shirt permitted greater adjustability. Mr. Zenzen also explained that the open back shirt is designed to have more tension across the chest when the arms are held in a certain position, and that it did not necessarily pull the arms forward, as is achieved by the claimed design.

On the summary record before the Court, the Court cannot conclude that the open back shirt is substantially the same as the adjudicated shirt or the claimed design. Rather, the Court finds that there are substantial open infringement issues that must be litigated before an infringement determination can be made. Therefore, the Court recommends that Plaintiff's Motion for Contempt on this basis be denied.

### B. Closed Back Shirts Sold in 2001.

Defendant contends that there is a critical distinction between the closed back shirts he sold in 2001[6] and both the

---

[6] These 15 shirts represent less than 1% of the total shirts sold from 1997 through 2002.

adjudicated bench shirt and the claimed design. Defendant argues that, in his modified closed back shirt, the high point of the arm hole is symmetrical to the low point of the arm hole. Defendant then advances a construction of the '908 patent that requires the low point of the armhole to be located along the side seam and to be placed around the forward part of the body, ahead of the high point of the armhole. Because claims 3-5 of the '908 patent do not refer to the underarm point or to an equivalent -- instead referring only to the low point of the armhole -- only shirts having a low point of the arm hole which is forward of the high point can literally infringe the patent and be subject to contempt. Defendant further notes that the prior adjudicated shirt embodied these characteristics.

Plaintiff counters that Defendant's argument relies on a visual trick. Plaintiff claims that Defendant's selection of the high point of the arm hole is entirely arbitrary, and that the low point of the 2001 shirt is actually forward of the shirt's arm hole high point. Plaintiff promised to demonstrate at the hearing that the arm hole high point in the 2001 shirt is actually about 1" towards the back of the shirt and that the side seam is forward of the center of the body.

But Plaintiff did not make the promised clear and convincing showing at the hearing. *KSM Fastening,* 776 F.2d at 1524 (the movant "bears the heavy burden of proving violation by clear and

11

convincing evidence.") To the contrary, the Court's examination of the 2001 shirt appears to show that the low point of the arm hold is symmetrical with the high point of the arm hole. While additional evidence might illuminate the point, the evidence of record does not support Plaintiff's assertion. Therefore, the Court recommends denying Plaintiff's Motion for Contempt on this basis.

## CONCLUSION

The Court is of the opinion that the accused shirts are more than colorably different than the adjudicated shirts. Under these circumstances, a contempt proceeding is not the appropriate vehicle for resolving Plaintiff's claims of infringement. Therefore, the Court recommends that Plaintiff's Motion for Contempt be Denied.

DATED: August 6, 2002    RESPECTFULLY SUBMITTED:

*[signature]*
ARLANDER KEYS
United States Magistrate Judge

Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable Blanche M. Manning. *See* FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).